HOLLINGSWORTH, D.B.A. HOLLINGSWORTH ENTERPRISES, APPELLEE, *v.* THE SOFTWARE HOUSE, INC., APPELLANT.

(No. 2139 — Decided October 7, 1986.)

*David M. Hollingsworth,* for appellee.

*Stanley L. Claybon,* for appellant.

BROGAN, P.J. This appeal is taken from a decision by the Court of

Common Pleas of Clark County which held that defendant-appellant, The Software House, Inc. breached an implied warranty of fitness for a particular purpose in its computer software contract with plaintiff-appellee, Richard Hollingsworth, d.b.a. Hollingsworth Enterprises. The court ordered that appellee be awarded the purchase price paid under the contract, $10,694.73, plus costs on the condition that appellee return the computer and software to the appellant.

Hollingsworth Enterprises is engaged in a small business of manufacturing electrical component parts. The Software House, Inc. is an Ohio corporation engaged in the sale of computer hardware and software.

In 1982 Richard Hollingsworth, owner and operator of Hollingsworth Enterprises, began to investigate the possibility of purchasing a computer system and software programs to be used in his business. Hollingsworth sought a computer system which would handle his inventory, billing, invoicing and the entering of orders from customers. Hollingsworth specifically sought a software program that would facilitate a single-entry system to automatically delete parts from inventory upon the entry of a sales invoice.

Hollingsworth searched the market for approximately eighteen months, but was not able to find a computer system and software program with the single-entry capability that he required. The best that the computer companies contacted could offer was either an inventory program that required a double-entry system, or custom-made programs to meet Hollingsworth's specifications. Because he did not desire a double-entry type program and, not wishing to undergo the expense of a custom-made program, Hollingsworth decided to wait until a system was developed that would perform the single-entry inventory procedure that he required.

In the spring of 1984, Hollingsworth was referred to The Software House. Hollingsworth contacted Mike Miller, a salesman for The Software House, and orally outlined his company's unique computer requirements to him specifying his desire for a single-entry inventory system. Miller represented to Hollingsworth that The Software House had a computer system and software which would meet his needs, recommending Northstar computer hardware, and software programs designed by Armor Systems.

On April 16, a representative of The Software House asked Hollingsworth to attend a demonstration of the Northstar computer that The Software House had recommended. Hollingsworth attended the demonstration conducted by Joe Rager, systems manager of The Software House. At that time, Hollingsworth specified the single-entry inventory requirement to Rager. Rager then demonstrated some programs on the Northstar computer which were not the programs that Hollingsworth was considering. There is conflicting testimony in the record as to whether an inventory program was demonstrated.

On April 23, 1984, the parties entered into a contract for the sale of a computer system and software by The Software House to Hollingsworth Enterprises. In early June, the system was delivered to Hollingsworth Enterprises; however, the system did not become operational for several days due to the fact that the equipment had been delivered without a printer cable.

When Hollingsworth began to use the computer system, he discovered that the system did not perform as promised. Specifically, the system would not perform the single-entry inventory procedure; however, it would

perform the inventory program with a double-entry system.

Beginning on approximately June 25, 1984, Hollingsworth telephoned The Software House concerning the problems with the computer system and spoke to Joe Rager. Rager instructed Hollingsworth to contact the software manufacturer, Armor Systems, directly concerning the problems with the programs. Armor in turn told Hollingsworth that all his questions were to be directed to The Software House and not to Armor, because The Software House was contractually obligated to service him.

On several other occasions Hollingsworth telephoned Joe Rager concerning the problem with the inventory program and other more minor problems with the computer system. Rager's response to the calls was that the programs would probably function as promised, and that he would look into it. In one of Hollingsworth's calls to The Software House, Rager informed him that he had attempted to run his copy of the Hollingsworth program himself and that he could not get the program to run properly either. Rager told Hollingsworth that he would contact the manufacturer, Armor, directly to seek assistance with the program.

On July 20, 1984, Hollingsworth wrote to Joe Rager referring to his previous phone calls and outlined the problems that he was experiencing with the system, specifically mentioning the problem with the inventory program. Hollingsworth did not receive a response to his letter of July 20 from either The Software House or from Armor Systems.

On August 14, Hollingsworth telephoned Rager regarding the items mentioned in his letter and Rager told him that he had been unable to obtain the source code from Armor which would allow him to make changes in the software program to correct the problems and modify the system.

Hollingsworth next contacted Rager by letter on September 15, 1984 reiterating the problems that he had been having and expressing his concern over the lack of service and help that he felt he was receiving from The Software House. In that letter Hollingsworth indicated that the system, as it was, was entirely useless and unacceptable to him, characterizing it as a "$10,000 boat anchor." No response to this letter was received by Hollingsworth.

Testimony in the record reflects that the representations made by The Software House to Hollingsworth concerning the capabilities of the system it recommended were made in good faith. Rager testified that he initially believed that the system sold to Hollingsworth Enterprises would perform the single-entry inventory function. Rager also stated that he assumed the sales force believed that the system had the single-entry inventory capability. It was not until Rager began to deal with Hollingsworth's complaints that he discovered the single-entry procedure did not function.

The record also reveals that up until approximately the end of September 1984, Rager believed Armor Systems to be under a verbal agreement to supply The Software House with the source code to the Hollingsworth program. However, Rager's attempts to obtain the source code from Armor were unsuccessful, and in early October 1984 Armor specifically refused to supply The Software House with the code and refused to modify the system for The Software House. Rager testified that with the source code, The Software House could have made the modifications Hollingsworth requested.

On October 2, 1984, Rager contacted Hollingsworth to inform him

that he had contacted a company which, for $8,000, could decompose the Armor software program to obtain the source code which Armor refused to supply to The Software House. Rager proposed that once the code was deciphered, it would cost about another $8,000 to modify the program to correct the minor problems with the system, but the modifications would not include correction of the inventory program. Rager also informed Hollingsworth that The Software House was considering initiating legal action against Armor for its failure to supply the source code to The Software House and that it no longer sold Armor software products. Hollingsworth declined Rager's proposal to have the Armor source code deciphered by the outside company.

On November 13, 1984 Hollingsworth had his attorney forward a letter to The Software House informing it that he wanted the programs corrected or, if not, he wanted The Software House to take the entire system back and to refund the purchase price. In response to the letter, Rager telephoned and asked for time to search around the country to find other programs to substitute for the Armor programs. Hollingsworth agreed to give The Softward House until the end of November to find substitute programs. Hollingsworth had no further contact with The Software House, and no modification was made to his computer and software system.

Hollingsworth filed suit against The Software House on December 27, 1984 alleging breach of implied warranty of fitness for a particular purpose, breach of express warranties, and breach of contract. On August 16, 1985 the trial court issued a decision finding The Software House had breached an implied warranty of fitness for a particular purpose. On September 4, 1985, Hollingsworth was granted judgment in the amount of $10,694.73 plus costs, and was ordered to return the computer equipment and software to The Software House.

Appellant, The Software House, argues two assignments of error on appeal:

"I. The trial court erred when it found that there had been a breach of an implied warranty of fitness for a particular purpose and awarded damages to appellee of the total contract price of $10,694.73 and ordered the return of all the computer hardware equipment and all software programs to appellant.

"II. The measure of damages to a purchaser for a breach of warranty in the sale of personal property is restricted to the difference between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damage of a different amount."

Appellant argues that the trial court's findings of the existence of an implied warranty of fitness for a particular purpose and of the breach of that warranty are contrary to the manifest weight of the evidence. Appellant argues that the only warranty between the contracting parties was the express warranty provided in Item 3 of the written contract which provides:

"TSH [The Software House] will include a sixty (60) day warranty, from date of installation, on applications and programs installed by TSH. This warranty applies to the performance of programs according to specifications signed by Hollingsworth."

Appellant argues that when Hollingsworth wrote in the words "Armor Software, Inc. Excalibur professional business series software" in Item 5 of the contract that he thereby specified standard applications of Armor Systems "Excalibur" software and

that the standard program is what Hollingsworth received. Appellant further argues that the standard equipment works properly in conformity with the representations in the program reference manuals. Therefore, appellant contends that the system did perform as warranted, and that there was no breach of warranty.

Appellant's argument is not well-taken.

Our standard of review has been set forth in *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80, 10 OBR 408, 411, 461 N.E. 2d 1273, 1276:

" 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' "

The transaction that gave rise to this dispute in which the trial court determined the existence of an implied warranty of fitness for a particular purpose is covered by the Uniform Commercial Code, Sales, R.C. Chapter 1302.

R.C. 1302.28 provides:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 1302.29 of the Revised Code an implied warranty that the goods shall be fit for such purpose."

There are three requirements for the implied warranty of fitness for a particular purpose: "* * * (1) [t]he seller must have reason to know the buyer's particular purpose * * *[,] (2) [t]he seller must have reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods * * *[, and] (3) [t]he

buyer must, in fact, rely upon the seller's skill or judgment. * * *" *Gumbs* v. *Internatl. Harvester, Inc.* (C.A. 3, 1983), 718 F. 2d 88, 92.

The trial court, in its findings of fact, concluded that the parties entered the sales contract on April 23, 1984 based on the representations made by The Software House through its salesman, Mike Miller, that The Software House had a computer system and software which would meet Hollingsworth's specific request for single-entry inventory control. The court found that the single most important reason for Hollingsworth's purchase of the equipment and software from The Software House was "the representation that it would provide a single-entry system to account for plaintiff's [Hollingsworth's] inventory."

The findings of fact and conclusions of law are not against the manifest weight of the evidence. The record reflects that both parties were aware of the particular purpose, single-entry inventory control, for which the computer system was being purchased. Hollingsworth outlined his requirements regarding inventory control to Mike Miller of The Software House in a telephone conversation on March 29, 1984 and in a meeting on April 3, 1984. The written contract provides: "TSH represents that it has the technical ability and competence to provide the necessary computer services to Hollingsworth." Joe Rager of The Software House testified that he believed that the software program would perform a single-entry inventory at the time the contract was signed and even after Hollingsworth complained that it would not perform the single-entry procedure. Rager stated that it was not until sometime later, when he began to deal with the problems, that he and The Software House discovered that the system

would not perform the single-entry inventory.

The record further reflects that Hollingsworth had little knowledge of computers and relied on appellant's skill and judgment to select the proper software and equipment to meet his needs.

Appellant further asserts that any implied warranty of fitness for a particular purpose which may have arisen was excluded under R.C. 1302.29(C)(1) and (2).

R.C. 1302.29(C)(1) was not invoked in this case. The statute provides:

"unless the circumstances indicate otherwise all implied warranties are excluded by expressions like 'as is,' 'with all faults,' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty."

The portion of the contract dealing with the software purchase contains no words of modification or exclusion of the implied warranty of fitness for a particular purpose.

The implied warranty of fitness for a particular purpose was not excluded under R.C. 1302.29(C) which provides in part:

"(2) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him[.]"

Hollingsworth did not have an opportunity to examine the equipment in such a manner that a defect should have been discovered. On April 16, 1984, Joe Rager of The Software House demonstrated the basic workings of an Armor Software System to Hollingsworth, but he did not use the exact programs Hollingsworth had purchased; and there is conflicting testimony as to whether an inventory program was demonstrated. Rager himself was unable to discover the defect in the program until several months after Hollingsworth had complained that the single-entry inventory would not function.

Competent, credible evidence in the record supports the trial court's finding that there was an implied warranty of fitness for a particular purpose pursuant to R.C. 1302.28 and that the warranty was breached by The Software House. The evidence does not support appellant's contention that there was an exclusion of the implied warranty of fitness for a particular purpose under R.C. 1302.29. Therefore, the trial court's findings of fact and conclusions of law are not contrary to the manifest weight of the evidence.

Appellant's second assignment of error challenges the trial court's award of $10,694.73, the purchase price, plus costs to appellee Hollingsworth. Appellant argues that the measure of damages is controlled by R.C. 1302.88(B) which provides that a buyer's damages for breach in regard to accepted goods is:

"* * * the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

Appellant's argument concerning the proper measure of damages is rejected. R.C. 1302.88(B), by its terms, applies only to goods that have been *accepted* by a buyer. The computer system at issue in this case was never accepted by Hollingsworth; therefore, R.C. 1302.88(B) does not apply.

"Acceptance" is defined in R.C. 1302.64 as follows:

"(A) Acceptance of goods occurs when the buyer:

"(1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or

"(2) fails to make an effective rejection as provided in division (A) of section 1302.61 of the Revised Code, but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

"(3) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him."

Hollingsworth's actions following delivery of the computer system did not constitute acceptance under the statutory definition. As soon as he began to use the computer system he experienced problems with the software program. Upon discovering the problems, Hollingsworth complained repeatedly to The Software House that the system did not conform to what he was promised. Hollingsworth indicated to The Software House that the system was not acceptable as it was, and he was assured by The Software House that the problems could be corrected.

Finally, in November 1984, after The Software House had informed Hollingsworth that the programs could not be corrected and that it was searching other software companies for replacement programs, Hollingsworth informed appellant that he wanted the program corrected to perform as promised, and, if not, he wanted the system removed and returned and his purchase price refunded.

Even if there had been an effective acceptance under R.C. 1302.64, that acceptance was effectively revoked under R.C. 1302.66(A)(1) which provides that a "buyer may revoke his acceptance of * * * [goods] whose nonconformity substantially impairs its value to him if he has accepted it * * * on the reasonable assumption that its non-conformity would be cured and it has not been * * * cured[.]" Hollingsworth reasonably believed the defects in his system would be cured based on the appellant's repeated assurances through September 1984 that the problems could be solved. The system without the single-entry inventory capacity was considered by Hollingsworth to be completely useless to his business. Under R.C. 1302.66(C), a buyer who effectively revokes his acceptance "has the same rights and duties with regard to the goods involved as if he had rejected them."

Both theories, the first being that buyer never accepted the computer system within the meaning of R.C. 1302.64(A), the second being that buyer did accept but effectively revoked that acceptance under R.C. 1302.66(A)(1), support the trial court's award of damages in the amount of the purchase price plus costs. Under either theory, the measure of damages is determined in accordance with R.C. 1302.85(A) which specifically provides that where a buyer rightfully rejects or justifiably revokes acceptance of goods, he may cancel and recover so much of the purchase price as has been paid. Therefore, the trial court was correct in awarding judgment to Hollingsworth in the amount of $10,694.73 representing the purchase price Hollingsworth paid The Software House for the computer system.

Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WILSON and WOLFF, JJ., concur.