[Cite as *Wright v. Harts Machine Servs., Inc.*, 2016-Ohio-4758.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

Carl Wright, et al.                                           Court of Appeals No.  F-15-004

      Appellees                                        Trial Court No. 12CV000314

v.

Harts Machine Services, Inc., et al.               **DECISION AND JUDGMENT**

      Appellants                                       Decided:  June 30, 2016

* * * * *

Kimberly C. Young and Gary Cowan, for appellees.

Terrance M. Miller and Jared M. Klaus, for appellant.

* * * * *

**YARBROUGH, J.**

## I.  Introduction

**{¶ 1}** Appellant, Harts Machine Services, Inc. ("Harts"), appeals the judgment of the Fulton County Court of Common Pleas, awarding damages to appellees, Pamela Worman and Carl Wright, as personal representative and administrator for the estate of James Worman, in the amount of $2,761,228.15 following a jury trial.

## A.  Facts and Procedural Background

{¶ 2} This action stems from an accident involving James and Pamela Worman that occurred on May 8, 2011.  On that date, James and Pamela were riding their self-assembled trike eastbound on S.R. 18 near Cecil, Ohio, when the right rear axle shaft suddenly fractured, causing the right rear tire to separate from the trike.  Harts supplied the axle shaft with the assistance of Michael Jarzembski, who fabricated the axle.

{¶ 3} James, who was driving the trike when the axle shaft snapped, lost control of the vehicle, and it careened into an adjacent ditch.  James and Pamela were ejected from the trike upon impact.  They both sustained life-threatening injuries requiring helicopter transport to Parkview Hospital in Fort Wayne, Indiana.

{¶ 4} Pamela's injuries consisted of a fractured tibia, scapula, humerus, lumbar vertebrae, and both femurs, as well as a collapsed lung and pulmonary insufficiency.  James's injuries included several thoracic vertebrate fractures, multiple cervical fractures, spinal cord injury, acute kidney failure, pulmonary insufficiency, paroxysmal ventricular tachycardia, and pneumonia.  Pamela underwent extensive treatment leading to her eventual partial recovery.  Unfortunately, James was unable to make a full recovery, and he eventually succumbed to his injuries on June 17, 2012.

{¶ 5} As a result of the foregoing, Pamela and Wright, as personal representative for James's estate, filed a complaint with the trial court on November 9, 2012, in which they asserted several product liability claims under the Ohio Products Liability Act ("OPLA"), sections 2307.71 to 2307.80 of the Ohio Revised Code, against Jarzembski as

2.

the manufacturer of the right rear axle shaft and Harts as the supplier of the axle shaft. In their claims against Jarzembski, appellees alleged that Jarzembski deviated from accepted industry standards in manufacturing the axle shaft by failing to induction harden and heat treat it. In their claims against Harts, appellees urged that Harts was negligent in selecting Jarzembski to manufacture the axle shaft when it should have known that Jarzembski was "incompetent, incapable and ill-equipped to manufacture that part." Further, appellees alleged that Harts negligently misrepresented that it would be supplying an axle shaft that was manufactured by a "reputable manufacturer."

{¶ 6} On January 4, 2013, Harts filed its answer in this action, in which it generally denied the product liability allegations contained in appellees' complaint. Further, Harts asserted that it was not a supplier under Ohio's product liability statutes. It also alleged that the axle shaft was not defective, and noted that it was not the manufacturer of the axle shaft in any event.

{¶ 7} Three days later, Harts filed a motion to dismiss under Civ.R. 12(B)(6). In its motion, Harts argued that it was not a supplier for purposes of product liability claims under R.C. 2307.71(A)(15)(a) because it was not "in the course of business" of supplying motorcycle axles. Additionally, Harts contended that it was not a manufacturer under R.C. 2307.71(A)(9), noting that the complaint also included Jarzembski as a defendant and specifically alleged that he was the manufacturer of the axle shaft.

{¶ 8} In opposition to Harts motion to dismiss, appellees argued that Harts was a supplier because it was in the business of selling motor vehicle parts, of which an axle

3.

shaft is one. The trial court agreed, finding that "an 'axle' comes within the parameter of the greater class of 'auto parts.'" Thus, the court determined that Harts could be found to be a supplier under R.C. 2307.71 and denied the motion to dismiss.

{¶ 9} Discovery commenced, and the matter proceeded through pretrial. Eventually, on April 1, 2014, Harts and Jarzembski filed a joint motion for summary judgment. In the motion, Harts and Jarzembski argued that they were entitled to summary judgment under Ohio's product liability statutes, because the axle shaft did not fit the definition of a "product." Harts and Jarzembski noted that the axle shaft was merely a duplicate of the prior axle shaft, manufactured at appellees' request for appellees' sole use. Further, Harts and Jarzembski argued that Jarzembski was not a "manufacturer" and Harts was not a "supplier" under R.C. 2307.71, since neither party was engaged in the business of selling motorcycle or trike parts. Alternatively, Harts contended that appellees' claims against it failed because appellees' could not prove that Harts made any express representations regarding the quality, character, or safety of the product, nor could they establish that Harts was negligent in selecting Jarzembski to manufacture the axle shaft.

{¶ 10} In opposition to Harts's and Jarzembski's motion for summary judgment, appellees urged that the axle shaft was a "product" under R.C. 2307.71 because the shaft was "entirely the creation of Jarzembski, at the behest of Harts." Moreover, appellees argued that Jarzembski was a manufacturer because he was in the business of manufacturing component parts for the automotive industry. While appellees

4.

acknowledged that Jarzembski primarily manufactured transmission parts and shafts for trucks, they asserted that Jarzembski could not escape liability simply because the part he manufactured in this case was integrated into a trike.[1] As to whether Harts was a supplier, appellees urged that Harts had been in the business of selling auto parts for decades, and that the axle shaft in this case qualified as an auto part.

{¶ 11} Upon consideration of the foregoing arguments, the trial court issued its decision on the motion for summary judgment on July 11, 2014. In its decision, the trial court agreed with Harts and Jarzembski that the axle shaft did not fit the definition of a product under R.C. 2307.71, because appellees specifically asked Harts to "duplicate" the shaft. Thus, the trial court found that the axle shaft was a custom item made according to appellees' design and according to appellees' request and not entered into the stream of commerce. Further, the court concluded that Harts and Jarzembski did not meet the statutory definitions of "manufacturer" or "supplier" under the OPLA. Accordingly, the court granted the motion for summary judgment, thereby disposing of appellees' product liability claims. However, in its entry, the court noted that "[a]ll other matters are continued for further proceedings, and for trial." In a later entry clarifying its order, the court indicated that the "other matters" included claims for negligence and breach of warranty, which the court determined were sufficiently pleaded in appellees' complaint.

---

[1] In a subsequent motion for partial summary judgment, appellees sought the court's determination that Harts was a manufacturer under R.C. 2307.78(B)(2) upon learning that Jarzembski was insolvent.

5.

{¶ 12} Almost two months later, Harts and Jarzembski filed a motion for leave to file a second motion for summary judgment, this time seeking judgment in their favor on appellees' negligence and warranty claims based on the assertion that the Ohio Products Liability Act abrogated all such common law products liability causes of action. Appellees responded by arguing that this action was no longer governed by the OPLA following the trial court's determination that the axle shaft was not a "product" under RC 2307.71.

{¶ 13} On September 23, 2014, the trial court issued its decision on the motion for leave to file a second motion for summary judgment. In its decision, the trial court found that the OPLA did not abrogate appellees' common law claims of negligence and breach of warranty. Additionally, the court granted appellees leave to file an amended complaint to more fully set forth their claims for negligence and breach of warranty.

{¶ 14} On October 2, 2014, appellees filed their amended complaint, in which they asserted several claims including, in relevant part, negligence (against Harts and Jarzembski), negligent misrepresentation (against Harts), breach of implied warranty of fitness for a particular purpose under R.C. 1302.28 (against Harts), and breach of implied warranty of merchantability under R.C. 1302.27 (against Harts and Jarzembski). Two weeks later, Harts and Jarzembski filed an answer, along with a separate motion for summary judgment seeking dismissal of appellees' claims based upon the assertion that the claims were abrogated by the OPLA under R.C. 2307.71(B).

6.

{¶ 15} Following receipt of appellees' memorandum in opposition to the second motion for summary judgment filed by Harts and Jarzembski, the trial court, on November 26, 2014, issued its decision denying said motion because it deemed that appellees' claims were not product liability claims and, consequently, were not abrogated by the OPLA.

{¶ 16} After several months of discovery, the matter eventually proceeded to a jury trial on April 28, 2015. The trial, which lasted several days, included testimony from multiple witnesses including Pamela, Wright, and other members of the Worman family. Additionally, both parties called expert witnesses ranging from accident reconstructionists to metallurgical engineers. At the conclusion of the trial, the jury found in favor of appellees on their claim against Harts for breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. The jury found in favor of Harts and Jarzembski as to all remaining claims contained in appellees' amended complaint. In total, the jury awarded damages to appellees in the amount of $2,761,228.15.

{¶ 17} In response to the foregoing verdict, Harts filed a motion for judgment notwithstanding the verdict on May 22, 2015. In its memorandum in support of the motion, Harts contended that it was not a "merchant" for purposes of the implied warranty of merchantability under R.C. 1302.27(A) since it was not in the business of selling motorcycle or trike parts. Further, Harts asserted that the evidence produced at trial failed to establish that appellees relied upon Harts's skill or judgment to select or

7.

furnish a suitable axle shaft, as required under R.C. 1302.28 concerning the implied warranty of fitness for a particular purpose. In addition, Harts argued that there was no evidence to demonstrate that the axle shaft was substandard given the fact that it was a custom-made item that was duplicated in accordance with appellees' instructions.

{¶ 18} On June 4, 2015, the trial court issued its decision on Harts's motion. In its entry, the court found that the question of whether Harts was in the business of selling motorcycle axle shafts was properly placed before the jury and resolved in appellees' favor. Further, the court determined that appellees relied upon Harts's good reputation in selecting it to duplicate the axle shaft. Although the court agreed that Harts duplicated the axle shaft according to appellees' instructions, it found that Harts assumed the risk that the prior axle shaft was not fabricated according to industry standard. Deferring to the jury's ultimate determination, the court found that Harts breached certain "implied duties and standards." Thus, the court denied Harts's motion for judgment notwithstanding the verdict.

{¶ 19} Thereafter, Harts filed a timely notice of appeal.

### B. Assignments of Error

{¶ 20} On appeal, appellant assigns the following errors for our review:

Assignment of Error No. 1: The trial court erred in allowing the jury to consider Appellees' claims for bodily injury or death for breach of implied warranties of merchantability and fitness for a particular purpose, which the Ohio Product Liability Act abrogates.

8.

Assignment of Error No. 2: The jury's verdict finding Defendant-Appellant Hart's Machine Services, Inc. ("Hart's") liable for breach of the implied warranty of merchantability is against the manifest weight of the evidence because, based upon the trial court's factual findings and the evidence presented at trial, Hart's was not a "merchant" of the product at issue.

Assignment of Error No. 3: The jury's verdict finding Hart's liable for breach of the implied warranty of fitness for a particular purpose is against the manifest weight of the evidence because the evidence presented at trial shows neither that Hart's had any reason to know that the decedent, James Worman, was relying upon its skill or judgment nor that James Worman in fact relied upon Hart's skill or judgment in furnishing a suitable half-shaft for his "trike."

## II. Analysis

### A. The OPLA does not abrogate appellees' claims.

{¶ 21} In its first assignment of error, Harts argues that the trial court erred in allowing appellees to pursue their claims for breach of the implied warranties of merchantability and fitness for a particular purpose, where such claims were allegedly abrogated by the OPLA under R.C. 2307.71(B).

{¶ 22} Whether appellees' claims were abrogated under R.C. 2307.71(B) is a question of law that we review de novo.

9.

{¶ 23} According to R.C. 2307.71(B), "[s]ections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability claims or causes of action." "Product liability claim" is defined under R.C. 2307.71(A)(13) as "a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a *manufacturer* or *supplier* for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, * * *." (Emphasis added.) Further, R.C. 2307.71 contains definitions for "manufacturer" (R.C. 2307.71(A)(9)) and "supplier" (R.C. 2307.71(A)(15)). Notably, the trial court in this case granted Harts's initial motion for summary judgment upon the finding that it was not subject to the OPLA because the axle shaft at issue was not a "product" and Harts was not a "manufacturer" or "supplier" under R.C. 2307.71.

{¶ 24} Nonetheless, Harts urges us to apply the abrogation provision within the OPLA to bar appellees' remaining claims for breach of the implied warranties of merchantability and fitness for a particular purpose. In its appellate brief, Harts cites to *Nadel v. Burger King Corp.*, 119 Ohio App.3d 578, 695 N.E.2d 1185 (1st Dist.1997), and *Stratford v. SmithKline Beecham Corp.*, 2:07-CV-639, 2008 U.S. Dist. LEXIS 84826 (S.D.Ohio 2008), in support of its assertion that appellees' claims were abrogated by the OPLA.

{¶ 25} In *Nadel*, the plaintiffs brought an action against Burger King following an incident in which they were burned after coffee sold by Burger King spilled from its cup.

In their complaint, plaintiffs included claims for, inter alia, breach of the warranty of merchantability and breach of the warranty of fitness for a particular purpose, both based on the allegation that the coffee was too hot to consume, as well as a products liability claim premised upon a defective product and Burger King's failure to warn of the dangers of handling the coffee. *Nadel* at 583. Burger King was granted summary judgment at the trial level, and the plaintiffs appealed. On appeal, the First District found that plaintiffs' implied warranty claims were abrogated by the OPLA. *Id.* at 585-86. However, the court found that plaintiffs' product liability claims survived summary judgment, as certain questions of fact existed regarding those claims. In so holding, the court examined Burger King's argument that it was immune under the OPLA because it was not a "manufacturer, seller, or supplier of the coffee under R.C. 2307.71." *Id.* at 589. Notably, the court expressly determined that Burger King was, in fact, a manufacturer as defined under R.C. 2307.71. *Id.*

{¶ 26} Likewise, in *Stratford*, the U.S. District Court for the Southern District of Ohio found that negligence claims against SmithKline Beecham Corp. were preempted by the OPLA. Once again, however, there appears to have been no dispute that SmithKline was a manufacturer under R.C. 2307.71. Indeed, the court described SmithKline as "a pharmaceutical company involved in research, development, testing, *manufacturing*, production, promotion, distribution, and marketing of pharmaceuticals for distribution, sale and use by the general public, including the antidepressant drug Paxil." (Emphasis added.) *Stratford* at *3.

11.

{¶ 27} Having considered the foregoing decisions, we find them distinguishable from the case sub judice. As noted above, the defendants in *Nadel* and *Stratford* were clearly subject to the OPLA as manufacturers under R.C. 2307.71. By contrast, the trial court in this case agreed with Harts's assertion that it is not a manufacturer or supplier under the OPLA.

{¶ 28} Ultimately, we find that the claims appellees have asserted against Harts have not been abrogated by the OPLA under R.C. 2307.71(B), the reach of which is limited to "product liability claims or causes of action." Indeed, appellees' claims cannot be considered "product liability claims" under R.C. 2307.71, since that term is limited to claims that seek recovery of compensatory damages "from a manufacturer or supplier" and Harts has already litigated this issue, leading the trial court to find that it is not a manufacturer or supplier.

{¶ 29} Accordingly, Harts's first assignment of error is not well-taken.

**B. The jury's verdict was not against the manifest weight of the evidence.**

{¶ 30} In Harts's second and third assignments of error, it contends that the jury's verdict was against the manifest weight of the evidence.

{¶ 31} When reviewing a decision in a civil case for being against the manifest weight of the evidence, we apply the same standard used in criminal cases. *Eastley v. Volkman*, 132 Ohio St. 3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17-23. That is, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "whether in resolving conflicts in the

12.

evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997). In weighing the evidence, we must be mindful of the presumption in favor of the finder of fact:

> [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment. *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 10 Ohio B. 408, 461 N.E.2d 1273 (1984), fn. 3.

{¶ 32} In its second assignment of error, Harts argues that the jury's finding of liability on appellees' claim for breach of the implied warranty of merchantability was against the manifest weight of the evidence.

{¶ 33} The implied warranty of merchantability is set forth in R.C. 1302.27, which provides, in relevant part: "(A) Unless excluded or modified as provided in section 1302.29 of the Revised Code, a warranty that the goods shall be merchantable is implied in a contract for their sale *if the seller is a merchant with respect to goods of that kind*." (Emphasis added.) "Merchant" is defined under R.C. 1302.01(A)(5), as

13.

a person who deals in goods of the kind or otherwise by the person's occupation holds the person out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by the person's employment of an agent or broker or other intermediary who by the agent's, broker's, or other intermediary's occupation holds the person out as having such knowledge or skill.

{¶ 34} Focusing on the emphasized portion of R.C. 1302.27 above, Harts asserts that the evidence does not support a finding that it is a merchant with respect to trike axle shafts. More particularly, Harts contends that the evidence presented at trial "showed that Harts had never before sold or made a part for a motorcycle or a trike – let alone a trike half-shaft." In support of its position, Harts notes that trial testimony from its owner, John Buskirk, reveals that Harts does not sell motorcycle or trike parts, and that the trike axle shaft in this case was the first and only such part it had ever sold. Further, Harts cites the prior ruling from the trial court on summary judgment, finding that Harts was not a supplier for purposes of the OPLA because the transaction that took place in this case was an isolated sale of a custom-made item that was designed by appellees and not placed into the stream of commerce. In sum, Harts acknowledges that it "may be a 'merchant' of machined automobile parts, but it is not a 'merchant with respect to goods of [the] kind' that it sold to James Worman."

{¶ 35} In response, appellees argue that the evidence elicited at trial established that Harts was a merchant with respect to goods of the kind at issue here. Appellees also rely upon Buskirk's testimony in support of its position.

{¶ 36} On cross examination, Buskirk testified that Harts Machine Services was known as Harts Auto Parts from its inception in 1926 until the name was changed in 2001. Further, appellees highlight Buskirk's testimony that 40 percent of Harts's business consists of the sale of auto parts provided to Harts by various suppliers nationwide. Thus, it is clear that Harts is a merchant with respect to auto parts. The only question remaining, then, is whether an axle shaft for a trike falls within the ambit of auto parts. Buskirk's testimony is again illuminative on this question. When asked whether he had previously hired Jarzembski to manufacture motorcycle parts, as opposed to standard auto parts, Buskirk responded "I guess I don't see the distinction of motorcycle part."

{¶ 37} Having reviewed the foregoing evidence, as well as the remaining trial testimony, we find that the jury was presented with evidence from which it could reasonably conclude that Harts was a merchant with respect to auto parts and, by extension, motorcycle axle shafts. While Buskirk testified that Harts was not engaged in the business of selling motorcycle or trike parts, he later acknowledged that there was no distinction between an auto part and a motorcycle part. He also responded in the affirmative when asked whether James Worman could rely upon Harts's reputation for providing a good quality shaft. Thus, we cannot say that the jury's determination of

15.

liability on appellees' claim for breach of the implied warranty of merchantability was against the manifest weight of the evidence.

{¶ 38} Accordingly, Harts's second assignment of error is not well-taken.

{¶ 39} In its third assignment of error, Harts argues that the jury's verdict finding it liable on appellees' claim for breach of the implied warranty of fitness for a particular purpose was against the manifest weight of the evidence.

{¶ 40} R.C. 1302.28 sets forth Ohio's implied warranty of fitness for a particular purpose, as follows:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 1302.29 of the Revised Code an implied warranty that the goods shall be fit for such purpose.

{¶ 41} Under R.C. 1302.28, three requirements must be met in order for an implied warranty of fitness for a particular purpose to exist: (1) the seller must have reason to know the buyer's particular purpose; (2) the seller must have reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods, and (3) the buyer must, in fact, rely upon the seller's skill or judgment. *Hollingsworth v. The Software House, Inc.*, 32 Ohio App.3d 61, 65, 513 N.E.2d 1372 (2d Dist.1986).

16.

{¶ 42} Here, Buskirk testified that he was aware of appellees' intention to install the axle shaft on their self-assembled trike. Thus, the first element is supported by the evidence in this case.

{¶ 43} While Harts acknowledges that the first element has been met in this case, it argues that there is no evidence to support the jury's conclusion that the second and third elements are met. Specifically, Harts contends that it had no reason to believe that appellees were relying upon its skill or judgment where appellees were merely seeking a duplicate of the axle shaft that had previously failed (the "McCabe shaft"). Further, Harts asserts that there is no evidence to demonstrate that appellees actually relied upon Harts's skill or judgment.

{¶ 44} Concerning the second and third elements, Wright and Buskirk each testified that appellees initially asked Harts to weld together the broken axle shaft that had previously failed. However, Buskirk insisted that welding the existing shaft would only weaken it, and that a new shaft would need to be fabricated. In reliance upon Buskirk's recommendation, appellees agreed to purchase a new axle shaft. According to Wright, appellees did not provide Harts with any instructions as to how the axle shaft was to be fabricated, but, rather, relied upon Harts's expertise in providing such parts.

{¶ 45} In light of the foregoing evidence, we find that a jury could reasonably conclude that Harts had reason to know that appellees were relying on its skill or judgment to furnish an appropriate axle shaft, and that appellees did, in fact, rely upon such skill or judgment. The cases cited by Harts in support of its position are inapposite

17.

here since they deal with situations in which the purchaser provides the seller with detailed specifications on the item it wishes to purchase. As noted above, appellees did not provide Harts with such specifications, but rather, relied upon Harts, a reputable auto parts dealer, to provide them with an acceptable axle shaft for their trike. Thus, we find that the jury's verdict on appellees' claim for breach of the implied warranty of fitness for a particular purpose is not against the manifest weight of the evidence.

{¶ 46} Accordingly, Harts's third assignment of error is not well-taken.

### III. Conclusion

{¶ 47} In light of the foregoing, we affirm the judgment of the Fulton County Court of Common Pleas. Costs are hereby assessed to Harts in accordance with App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

Stephen A. Yarbrough, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.